By the Court.*—Bosworth, Ch. J.
J.—Bo authority is cited by either counsel, in support of any proposition argued on this appeal.
The plaintiff was possessed of ten checks, payable to Ms own order; he indorsed them, and delivered them to his clerk, the defendant Williams, with instructions to deposit them to the plaintiff’s credit, in the Hanover Bank. Williams received them, accompanied with such instructions, and virtually promised to so deposit them. Instead of doing so, Williams transferred them to the defendant Menck. Williams and Menck refusing to return the cheeks, this action is brought to recover their amount.
It was not contended on the argument that Menck has any defence, unless Williams has. It is quite clear on the evidence that Menck has no rights superior to those wMch Williams *91 had. Clark testifies that on the 7th of March, “ Mr. Menck stated that Mr. Williams had come to him before taking the cheeks, asking what he should do.” It was also testified that Menck said to the plaintiff in the interview, when the cheeks were demanded—“I will come Monday afternoon, at four o’clock; I will come and settle the matter with you. I am free to confess that when I see I am wrong, I am willing to give up.” That the settlement was to be a return of the checks, or their equivalent in money. Menck also said, “ I have been advised that this money must not be squandered away.” All this imports that Menck had notice,when he took the checks, how Williams got them. It was no part of the evidence offered and-rejected, that he took them without notice. This brings us to a consideration of the defence. The defence is that, although Paddon was doing business ostensibly as principal, and Williams was apparently his clerk, and it was so represented to the public to induce business, yet in fact the business was that of a firm formerly trading under the name of I). M. Berry & Co., of whom Williams was one; that the plaintiff was, in fact, their clerk, that the checks were, therefore, the property of D. M. Berry & Co., and that Williams, as between him and the plaintiff, had a right to take them, nolens miens, and dispose of them as he pleased.
If the property of the old firm of D. M. Berry &. • Co. was transferred to the plaintiff under the circumstances stated in the answer, it was evidently done to place it beyond the reach of the creditors of that firm. Although the fact would not disable those creditors from reaching it, yet, as between the plaintiff and such firm, the title would be in him, and D. M. Berry & Go. could not reclaim it by legal proceedings; nor defend themselves against a suit for taking it by force.
It would be a fraud upon all persons consigning their property to Paddon for sale, believing him to be the principal in,- and proprietor of, the business, to permit D. M. Berry & Co. to take the proceeds of property thus consigned, and dispose of it as their own. Nine of these checks are for the price of property consigned by third persona to Paddon for sale, and sold by him pursuant to such consignments. By virtue of the contract between Paddon and these persons, the legal title to the consigned property, as against all third persons, was vested *92 in Pacldbn, and the proceeds were his. As between the. con. signors, Paddon, D. 1-1. Berry & Co., and all creditors of the latter firm, or of either member of it, the consignors are entitled to the proceeds of their property.
To prevent fraud upon the public, and upon any person consigning his property to Paddon for sale, the legal relations between the parties should be held to be such as Paddon and D. M. Berry & Co. have represented them to the public. If D. M. Berry & Co. have any rights, as between themselves and Paddon, which a court of equity will protect, founded upon their alleged agreed relation to each other-, they should be treated as equitable rights, and enforced in a suit proceeding on equitable grounds; and looking to the protection and payment, as the primary consideration, of the creditors of Paddon In respect of business represented to the world as his, and only his, he should be treated as having the legal title, and the legal right to redeem any property from D. M. Berry & Co., which they may forcibly, or against the will of Paddon, convert to their own use.
The evidence proffered and rejected was, “ that during all “ this time the agreement was,between all the parties, includ- “ ihg the plaintiff, that the business was to belong to D. M. “ Berry & Co., and that the plaintiff Paddon was to be simply a “ clerk. The members of the old firm of D. M. Berry & Co. “ were to take all the gains and profits and proceeds of the “ business, and that that understanding was in operation when • Mr. Williams took the checks in question.”
According to the terms of this offer, the legal title to the corpus of the property and effects constituting the capital and resources of the business, was not to be in D. M. Berry & Co., but in Paddon. Their right extended to the gains and profits, and only that. They would have no right, legal or equitable, to violently or fraudulently possess themselves of the corpus.
They might file a bill; if the case be not so infected with fraud that a court would not lend its aid, and ,if there could not be an amicable adjustment, for an accounting, and an application of the property of Paddon in that business to pay its debts; and then distribute the surplus.
The protection of those dealing with Paddon, and the prevention of fraud, require a court, in a case like this, to hold *93 that Williams has no right to claim any part of the property against the consent of Pack! on, and that his only remedy is by action for equitable relief, in which the rights of persons dealing in good faith with Paddon will be protected, and the sums due them be first paid.
The judgment should be affirmed.

 Present, Boswobth, Ch. J., and White and Monell, JJ.